

**FILED**

May 31 2016, 8:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Jason R. Delk
Daniel J. Gibson
Delk McNally LLP
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Catherine E. Sabatine
Debra A. Mastrian
SmithAmundsen LLC
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry M. New, and Heritage Medical Group, Inc., f/k/a Heritage Medical Services, Inc., <br><br> *Appellants-Defendants*, <br><br> v. <br><br> T3 Investments Corporation, <br><br> *Appellee-Plaintiff*. | May 31, 2016 <br><br> Court of Appeals Case No. 18A02-1508-PL-1161 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Marianne L. Vorhees, Judge <br><br> Trial Court Cause No. 18C01-1106-PL-17 |

**Brown, Judge.**

[1] Larry M. New, and Heritage Medical Group, Inc., f/k/a Heritage Medical Services, Inc. ("Heritage," and collectively with New, the "Appellants") appeal the trial court's Order on the Summary Judgment Motions Filed by the Parties granting summary judgment in favor of T3 Investments Corporation ("T3") and denying the Appellants' summary judgment motion. The Appellants raise one issue which we revise and restate as whether the court erred in granting summary judgment in favor of T3 and denying the Appellants' cross-motion for summary judgment. We affirm.

## *Facts and Procedural History*

[2] On March 1, 2001, Heritage, T3, Inverness Corporation ("Inverness"), and Dennis Streeter, organized Hillcrest Estates, LLC ("Hillcrest") and Heritage was named the managing member. New is the President of Heritage. On or about that same day, Hillcrest executed a promissory note ("Note") in connection with a loan (the "Loan") from US Bank National Association f/k/a Firstar Bank, NA (the "Bank") in the original principal amount of $1,740,000. As collateral, Hillcrest pledged certain real and personal property located in Liberty, Indiana as described in an Open-End Mortgage of Real Property, Security Agreement of Personal Property, and Assignment of Rents and Profits dated March 9, 2001 (the "Mortgage"). Sycamore Springs, LLC ("Sycamore Springs"), a rehabilitation care facility on the property, leased the property from Hillcrest. As a condition of making the Loan evidenced by the Note, the Bank obtained commercial guaranties, dated March 5, 2001, from seven individuals and entities, including P. Eric Turner, who was President of T3, Turner's

brother Kyle, New, John W. Bartle, Heritage, Inverness, and T3 (collectively, the "Guarantors").

[3] In April 2004, the Guarantors executed reaffirmations of the guaranties. The Guarantors each agreed to be jointly and severally liable for the full amount of Hillcrest's indebtedness under the Note, which was also amended in 2004. That summer, the Bank agreed to renew or extend the Loan upon receipt of financial information from Hillcrest and the Guarantors. Financial information was provided to the Bank, but the Bank did not follow through with the renewal or extension of the Loan, which matured in August 2004.

[4] On July 14, 2005, the Bank commenced an action against the Guarantors in the Wayne Superior Court (the "Guarantor Lawsuit"), in which it sought recovery from the Guarantors for the outstanding principal on the Loan. On October 19, 2007, the Bank commenced a foreclosure action against Hillcrest and Sycamore Springs in the Union Circuit Court (the "Foreclosure Lawsuit"), seeking foreclosure of the real property and replevin of the personal property that was pledged as collateral for the Loan.

[5] On October 10, 2008, the Bank, Hillcrest and the Guarantors entered into a Settlement and Mutual Release Agreement (the "Settlement Agreement"), which provided in part as follows:

> This Settlement and Mutual Release Agreement (the "Agreement") is entered into as of October 10, 2008, by and between US Bank National Association f/k/a Firstar Bank, N.A. ("Bank"), and Hillcrest Estates, LLC ("Hillcrest"), and P. Eric

Turner, Kyle D. Turner, Larry M. New, John W. Bartle, Heritage Medical Group, Inc., Inverness Corporation and T-3 Investments Corporation (collectively "Guarantors") and states as follows:

\* \* \* \* \*

**WHEREAS**, the parties hereto believe that resolution of the Loan, the Foreclosure Lawsuit and the Guarantor Lawsuit under the terms and conditions set forth herein is in their mutual best interest and avoids the uncertainty and costs of further litigation; and

NOW THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

\* \* \* \* \*

2. **Agreed Judgments**. Simultaneously with the execution of the Agreement, counsel for Hillcrest and the Guarantors, other than Inverness which is being released, shall execute "Agreed Judgments" against Hillcrest and the Guarantors . . . which may be entered against them in the Foreclosure Lawsuit and the Guarantor Lawsuit under the terms and conditions set forth herein.

3. **Agreed Judgments Terms / Filings**

(a) **Agreed Guarantor Judgment**. Judgment against the Guarantors, other than Inverness . . . , shall be in the form attached as Exhibit A hereto. It is acknowledged by the parties that the amounts reflected as owing are calculated as of October 20, 2008. . . .

(b) **Agreed Foreclosure Judgment**. Judgment against Hillcrest in the Foreclosure Lawsuit, shall be in the form attached as Exhibit B hereto. It is acknowledged by the parties that the amounts stated as owing are calculated as of November 18, 2008. . . .

\* \* \* \* \*

5. **Entry of Agreed Judgments**. In the event the Bank has not received Payment, as defined below, then the Bank may proceed to have the Agreed Judgments entered as follows:

(a) the Agreed Guarantor Judgment may be entered any time on or after October 20, 2008; and

(b) the Agreed Foreclosure Judgment may be entered any time on or after November 18, 2008.

6. **Payment**. "Payment" shall be in the amount of $2,264,317.80, as of September 23, 2008, as reflected on the attached Exhibit C together with per diem interest . . . .

7. **Actions Upon Payment**. Upon receipt of the Payment prior to entry of the Agreed Guarantor Judgment, the parties shall file stipulations and orders for the dismissal of the Guarantor Lawsuit and the Foreclosure Lawsuit in the forms attached as Exhibits D and E respectively. In the event Payment is made after entry of the Guarantor Judgment but before entry of the Foreclosure Judgment, the Bank shall provide a satisfaction of the Guarantor Judgment and counsel for the parties shall submit a Stipulation for Dismissal of the Foreclosure Lawsuit in the form attached as Exhibit E.

\* \* \* \* \*

10. **Mutual Release**. With the sole exception of the rights granted to the Bank under this Agreement, which shall survive unless Payment is made as set forth herein, the Bank, Hillcrest, and the Guarantors, for themselves, their predecessors, successors, parent companies, affiliates, partners, members, heirs, representatives, assigns and all other persons or entities, do hereby fully, unconditionally and irrevocably waive as against, and release, one another, and all of their officers, directors, stockholders, partners, members, parents, affiliates, employees, agents, representatives, attorneys, predecessors, successors and assigns, of and from any and all actions, causes of action, claims, demands, damages (including without limitation compensatory or punitive damages) defenses, counterclaims, setoffs of any kind, costs, penalties, attorneys fees or expenses, whether known or unknown, whether contingent or liquidated, whether in contract, tort, statute or under any other legal theory, arising out of or related to, the Loan and in connection with any act or omission by any party, and including without limitation, the claims and counterclaims which are the subject of the Foreclosure Lawsuit and the Guarantor Lawsuit.

Appellants' Appendix at 174-177. The payment called for under the Settlement Agreement was never made to the Bank.

On October 20, 2008, the court in the Guarantor Lawsuit entered an agreed judgment (the "Agreed Judgment"), consistent with Exhibit A contained in the Settlement Agreement, against the Guarantors in favor of the Bank. On November 18, 2008, the court in the Foreclosure Lawsuit held a trial, and on December 29, 2008, it issued a Judgment and Decree of Foreclosure (the "Foreclosure Judgment") against Hillcrest, awarding the Bank a judgment against Hillcrest in the amount of $2,282,260.65, plus interest and costs, and foreclosing on the Mortgage, noting that the property would be sold at a

Sheriff's sale and that the proceeds would be applied toward the judgment. On February 20, 2009, following a motion by Sycamore Springs, the court in the Foreclosure Lawsuit entered an amendment to the Foreclosure Judgment (the "Amended Foreclosure Judgment"), and on May 13, 2009, in the Guarantor Lawsuit, Sycamore Springs took assignment of the Agreed Judgment from the Bank (the "Assignment").

[7] The property was sold at a Sheriff's sale to Sycamore Springs, and following the sale there was a deficiency judgment in the Foreclosure Lawsuit in the amount of $865,315.95. On July 31, 2009, the court in the Guarantor Lawsuit entered the following order (the "Deficiency Order"):

> [Sycamore Springs], as assignee and successor in interest to [the Bank], by counsel and the Guarantors, P. Eric Turner and T-3 Investments by P. Eric Turner, in person and by counsel. Libby Moat, appeared for hearing on proceedings supplemental on July 30, 2009. Arguments of counsel were heard and evidence submitted by the parties.
>
> The Court, having heard arguments and reviewed such evidence, finds in favor of [Sycamore Springs], and finds that the deficiency judgment owed to [Sycamore Springs] by the Guarantors, jointly and severally, is $865,315.95 as of July 30, 2009, pursuant to the calculation reflected on Plaintiff's Exhibit A together with interest continuing to accrue at the rate of $195.06 per day (or if reduced, 8.375% on the outstanding principal balance of the judgment) after July 30, 2009. The Court denies Guarantors' request for credits for rent or property taxes.
>
> The Guarantor, P. Eric Turner, represented in open court that funds are presently available for satisfaction of the deficiency

judgment, as determined by the Court, at First Merchants bank. The Court further grants [Sycamore Springs'] Motion for a Final Order in Garnishment to issue to Garnishee Defendant, First Merchants Bank, for immediate garnishment of funds in the sum of $865,315.95 in favor of Sycamore Springs . . . .

*Id.* at 168-169. T3 paid the full deficiency, totaling $865,511.01, and on October 6, 2009, the court in the Guarantor Lawsuit entered a Satisfaction of Judgment.

[8] On June 8, 2011, T3 filed its complaint for contribution against the Appellants in the Delaware Circuit Court. On September 14, 2011, the Appellants filed their Answer to the Complaint and Counterclaim. On December 16, 2011, T3 filed a Motion to Dismiss Counterclaim, and on January 27, 2012, the Appellants filed a Motion to Amend Counterclaim. T3 filed an answer to the Amended Counterclaim on February 7, 2012.

[9] On November 6, 2014, the Appellants filed a motion for judgment on the pleadings and supporting memorandum. On December 19, 2014, T3 filed its Motion for Summary Judgment, Combined Brief in Support of Motion for Summary Judgment and in Opposition to Defendants' Motion for Judgment on the Pleadings, and supporting Designation of Evidence. On January 30, 2015, the court entered an order denying the Appellants' motion for judgment on the pleadings and setting the briefing schedule on summary judgment. On February 27, 2015, the Appellants filed a Motion for Summary Judgment, Combined Memorandum of Law in Support of Motion for Summary Judgment and in Opposition to T3's Motion for Summary Judgment, and supporting

Designation of Evidence. On April 1, 2015, T3 filed its Combined Reply in Support of Motion for Summary Judgment and Brief in Opposition to the Appellants' Cross-Motion for Summary Judgment, together with its Designation of Facts, Evidence and Materials in Opposition to the Appellants' Cross-Motion for Summary Judgment.

On June 18, 2015, the court conducted a hearing and on July 16, 2015, entered an Order ("Summary Judgment Order") granting summary judgment in favor of T3 and against each of the Appellants in the amount of $173,102.20, respectively, representing their pro-rata share of the deficiency judgment paid by T3. On July 28, 2015, the Appellants filed a motion to reconsider, T3 filed its response in opposition, and on August 11, 2015, the Appellants filed their Reply in support of the motion. The court denied the motion on August 24, 2015.[1]

## *Discussion*

The issue is whether the court erred in granting summary judgment in favor of T3 and denying the Appellants' cross-motion for summary judgment. We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a prima facie showing that there are no

---

[1] Following the court's initial entry of summary judgment in favor of T3, it ordered supplemental briefing on the issue of the amount of interest it could award and withheld entry of final judgment. The court's August 24, 2015 order, in addition to denying the Appellants' motion to reconsider, found that T3 is entitled to recover interest from the Appellants in the sum of $82,050.82, and entered final judgment.

genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.*

[12] Our review of a summary judgment motion is limited to those materials designated to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. *Catt v. Bd. of Comm'rs of Knox Cnty.*, 779 N.E.2d 1, 3 (Ind. 2002). The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.* The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind. Ct. App. 1997), *trans. denied*. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

[13]     The court in its Summary Judgment Order reasoned as follows:

> The Court agrees with T3: each of the five remaining guarantors, Eric Turner, Kyle Turner, Larry New, Heritage, and T3, is responsible for 1/5 of the outstanding indebtedness.
>
> The [Settlement] Agreement which the [Appellants] assert as a defense in this action for contribution was with the bank; the parties were supposed to pay a sum of money (over $2.2 million) to the bank in order to settle [the Guarantor Lawsuit] and [the Foreclosure Lawsuit]. The only payment the Agreement contemplated was to the bank. And no party made a payment to the bank pursuant to the [Settlement] Agreement. The bank foreclosed on the real estate and obtained a deficiency judgment, which T3 paid.
>
> [T3] and [the Appellants] did not exchange any consideration for the purported release between them in the [Settlement] Agreement. The only consideration was the bank's agreement to dismiss two lawsuits in exchange for a payment (the $2.2 plus million payment mentioned above). The parties did not make this payment.
>
> [The Appellants] point to Paragraph 10 in the [Settlement] Agreement, "Mutual Release," to support their argument. [The Appellants'] argument that the language in the [Settlement] Agreement constituted a release and waiver as to any claims for contribution made at a later date and that [T3] cannot seek contribution against [the Appellants] due to this language fails as a matter of law. . . .
>
> Because the Court finds T3's argument as the prevailing argument in this action, [the Appellants'] counterclaim alleging a frivolous lawsuit fails as a matter of law as well.

Appellant's Appendix at 19.

[14] Citing case law for the proposition that a promise for a promise constitutes consideration, the Appellants argue a "mutual release within a settlement agreement is sufficient consideration <u>in and of itself</u> to render" such release enforceable as a matter of law. Appellants' Brief at 13. They assert that each party agreed to waive and release any and all claims arising out of or relating to the Loan, the Guarantor Lawsuit, and/or the Foreclosure Lawsuit against one another and that such mutual promises constitute sufficient consideration. The Appellants argue that "[s]pecifically, by agreeing to forebear legal rights and claims against each other," the Appellants and T3 "each received a benefit (a release of liability) and a detriment by (releasing other parties from liability and waiving specific claims against specific parties)." *Id.* at 13-14.

[15] T3 argues that the only consideration contemplated by the parties under the Settlement Agreement concerned the Bank receiving a payment of approximately $2.2 million in exchange for it dismissing the Guarantor and the Foreclosure lawsuits. It asserts that it is undisputed the Guarantors, including T3 and the Appellants, did not pay or receive anything of value in exchange for releasing claims amongst themselves. T3 maintains that in order for a release to be enforceable it must be supported by consideration, which consists of a bargained-for exchange. T3 also argues that there is nothing in the Settlement Agreement demonstrating that the Guarantors bargained for any benefits and detriments with respect to each other.

[16] "The 'doctrine of contribution rests on the principle that where parties stand in equal right, equality of burden becomes equity.'" *Balvich v. Spicer*, 894 N.E.2d 235, 245 (Ind. Ct. App. 2008) (quoting *Cook v. Cook*, 92 Ind. 398, 399 (1884)). "Moreover, the right of contribution is based upon 'natural Justice, [and] it applies to any relation, including that of joint contractors, where equity between the parties is equality of burden, and one of them discharges more than his share of the common obligation.'" *Id.* (quoting *Norris v. Churchill*, 20 Ind. App. 668, 670, 51 N.E. 104, 105 (1898)). "The right of contribution operates to make sure those who assume a common burden carry it in equal portions." *Id.* (quoting *Fleck v. Ragan*, 514 N.E.2d 1287, 1289 (Ind. Ct. App. 1987)). "[E]xcept as provided in I.C. 26-1-3.1-419(e) or by agreement of the affected parties, a party having joint and several liability who pays the instrument is entitled to receive from any party having the same joint and several liability contribution in accordance with applicable law." *Id.* (quoting Ind. Code § 26-1-3.1-116) (footnote and emphasis omitted).

[17] "A release, as with any contract, should be interpreted according to the standard rules of contract law." *Huffman v. Monroe Cnty. Cmty. Sch. Corp.*, 588 N.E.2d 1264, 1267 (Ind. 1992). "[R]elease documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing." *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314 (Ind. 1996) (quoting *Huffman*, 588 N.E.2d at 1267). Generally, "[i]nterpretation of a contract is a pure question of law and is reviewed de novo." *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 252 (Ind.

2005). If its terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning. *Id.* Courts should interpret a contract so as to harmonize its provisions, rather than place them in conflict. *Id.* "We will make all attempts to construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Rogers v. Lockard*, 767 N.E.2d 982, 992 (Ind. Ct. App. 2002). "A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms." *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002), *reh'g denied*. "When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder." *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010).

[18] Contracts are formed when parties exchange an offer and acceptance. *Fox Dev., Inc. v. England*, 837 N.E.2d 161, 165 (Ind. Ct. App. 2005) (citing *Rosi v. Bus. Furniture Corp.*, 615 N.E.2d 431, 435 (Ind. 1993)). "The basic requirements are offer, acceptance, consideration, and 'a meeting of the minds of the contracting parties.'" *Morris v. Crain*, 969 N.E.2d 119, 123 (Ind. Ct. App. 2012) (quoting *Batchelor v. Batchelor*, 853 N.E.2d 162, 165 (Ind. Ct. App. 2006)). "To constitute consideration, there must be a benefit accruing to the promisor or a detriment to the promisee." *Ind. Dep't of State Revenue v. Belterra Resort Ind., LLC*, 935 N.E.2d 174, 179 (Ind. 2010), *modified on reh'g on other grounds*, 942 N.E.2d 796 (2011). "A benefit is a legal right given to the promisor to which the promisor would not otherwise be entitled." *Id.* "A detriment on the other hand is a legal right the promisee has forborne." *Id.* "The doing of an act by one at the request of

another which may be a detrimental inconvenience, however slight, to the party doing it or may be a benefit, however slight, to the party at whose request it is performed, is legal consideration for a promise by such requesting party." *Id.* "In the end, consideration—no matter what its form—consists of a bargained-for exchange." *Id.*

[19] Turning to the Settlement Agreement, we begin by noting that it reflects that the Guarantors negotiated from the same position. That is, the Settlement Agreement throughout refers to the Guarantors as one entity, and indeed the Agreed Judgment attached to the agreement as Exhibit A lists all of the Guarantors other than Inverness due to its bankruptcy. The Settlement Agreement recited that the Bank had commenced the Guarantor Lawsuit against the Guarantors and the Foreclosure Lawsuit against Hillcrest and that "the parties hereto believe that resolution of the Loan, the Foreclosure Lawsuit and the Guarantor Lawsuit under the terms and conditions set forth herein is in their mutual best interest and avoids the uncertainty and costs of further litigation," and accordingly they entered into the agreement. Appellants' Appendix at 174.

[20] "It is well-settled that, in order to be valid, a release must be supported by consideration." *Peters v. Kendall*, 999 N.E.2d 1030, 1034 (Ind. Ct. App. 2013), *reh'g denied*, *trans. denied*. This court has observed that "[c]onsideration consists of *bargained-for* exchange," and the notion that "consideration must actually be bargained-for is a long recognized and fundamental common law principle." *Bogigian v. Bogigian*, 551 N.E.2d 1149, 1151 (Ind. Ct. App. 1990), *reh'g denied*.

Here, there is no bargained-for exchange among the Guarantors, who negotiated collectively with the Bank and Hillcrest. The bargained-for exchange concerned the Loan, in which the Bank was owed $2,264,317.80, and the two lawsuits the Bank had filed, and the parties made an agreement as to how to resolve those specific issues. The Guarantors, including T3 and the Appellants, did not enter into a settlement among themselves in the Settlement Agreement. *Cf. Sands v. Helen HCI, LLC*, 945 N.E.2d 176, 181 (Ind. Ct. App. 2011) (noting that a mutual release that was part of a binding settlement agreement was valid where the parties "agreed to the essential terms (reciprocal dismissals with prejudice, with reciprocal mutual releases) resolving the issues between them"), *trans. denied*. We agree with the trial court that consideration is not present between T3 and the Appellants to support the existence of a contractual relationship between them, and that, accordingly, the release contained in the Settlement Agreement is not applicable to T3's contribution claim. *See Kandlis v. Huotari*, 678 A.2d 41, 45 (Me. 1996) (observing that, in general, "the right to contribution can be destroyed only by an agreement between the *obligated* parties"); *see also* RESTATEMENT (FIRST) OF CONTRACTS, § 75 cmt. e (1932) (noting that consideration is not gratuitous "[i]f it is bargained for as the exchange for the promise").[2]

---

[2] The Appellants also argue that T3's claim is barred by the voluntary payment doctrine. However, that argument was not raised until they filed their motion to reconsider. The trial court was free to disregard this issue, which was not properly preserved for appeal. *See Overton v. Grillo*, 896 N.E.2d 499, 504 (Ind. 2008) (noting that the issue of incapacity was not preserved and that "[t]he trial court was free to disregard the issue . . . which was raised for the first time in the plaintiff's motion to reconsider the grant of summary judgment),

## *Conclusion*

For the foregoing reasons, we affirm the court's Summary Judgment Order.

Affirmed.


Baker, J., and May, J., concur.

---

*reh'g denied*. Further, as noted above T3 paid the deficiency pursuant to an order of garnishment contained in the Deficiency Order. The Indiana Supreme Court has stated that the voluntary payment rule

> is that money voluntarily paid in the face of a recognized uncertainty as to the existence or extent of the payor's obligation to the recipient may not be recovered, on the ground of 'mistake,' merely because the payment is subsequently revealed to have exceeded the true amount of the underlying obligation.

*Time Warner Entertainment Co., L.P. v. Whiteman*, 802 N.E.2d 886, 892 (Ind. 2004) (emphasis omitted), *reh'g denied*. We cannot say that the voluntary payment doctrine applies under these circumstances.