

FILED
Mar 08 2019, 6:04 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Crystal G. Rowe
Alyssa C.B. Cochran
Kightlinger & Gray, LLP
New Albany, Indiana

Galen Bradley
Kightlinger & Gray, LLP
Merrillville, Indiana

ATTORNEY FOR APPELLEES

Ryan D. Etter
Ken Nunn Law Office
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jacob Todd, <br> *Appellant-Defendant,* <br><br> v. <br><br> Tonji Coleman and Amos Johnson, <br> *Appellees-Plaintiffs* | March 8, 2019 <br><br> Court of Appeals Case No. 18A-CT-2138 <br><br> Interlocutory Appeal from the Cass Circuit Court <br><br> The Honorable Leo T. Burns, Judge <br><br> Trial Court Cause No. 09C01-1607-CT-19 |

**Crone, Judge.**

## Case Summary

Tonji Coleman was injured in an automobile accident and filed a negligence action against Jacob Todd. The parties' attorneys engaged in negotiations and made a verbal agreement to settle the case for $10,000. The trial court initially ordered Coleman to comply with the settlement agreement but subsequently granted Coleman's motion to reconsider and rescinded the original order. In this interlocutory appeal, Todd asserts that Coleman is bound by the settlement agreement and that the trial court therefore erred in rescinding its order to compel compliance. We reverse and remand.

## Facts and Procedural History

In July 2016, Coleman filed a negligence action against Todd stemming from an August 2014 automobile accident in which she was injured.[1] Over the next eighteen months, the parties scheduled three mediation sessions but completed none, due largely to Coleman's nonattendance. In January 2018, Coleman's counsel ("Counsel 1")[2] negotiated with counsel for Todd's insurer ("Insurer") to settle all claims. Insurer's initial offer of $5000 was increased via counteroffer to a $10,000 settlement of all claims. On February 2, 2018, Counsel 1 indicated that Coleman had agreed to the $10,000 figure, and Insurer began preparing the necessary documents. On February 12, 2018, Insurer filed a notice of

---

[1] Amos Johnson is also a named plaintiff, but he is not participating in this appeal.

[2] "Counsel 1" refers to Leeman Law Offices. Two attorneys worked on Coleman's case, Kelly Leeman and Amber Garrison. Appropriate distinctions between the two attorneys will be designated as necessary.

settlement in the trial court. On February 21, 2018, Counsel 1 sent Insurer a letter requesting that the settlement check be issued. Two days later, Counsel 1 discovered that Coleman had hired another law firm ("Counsel 2") to represent her. Meanwhile, Insurer sent the settlement documents to Counsel 1, who informed Insurer about the change of representation and forwarded the documents to Counsel 2 with a letter apprising Counsel 2 of the accepted settlement offer.

[3] During the next couple months, Todd learned that Coleman no longer wanted to settle the case. On April 19, 2018, Todd, through Insurer, filed a motion to enforce the settlement agreement. The trial court granted Todd's motion and issued an order for Coleman to comply with the settlement agreement. A few days later, Coleman filed a motion to reconsider, claiming that she neither agreed to nor signed the $10,000 settlement agreement. She requested that the trial court issue an order rescinding its previous order enforcing settlement. The trial court conducted a hearing, during which Coleman and Counsel 1 testified. Both attorneys from Counsel 1 testified that it was their understanding, based on communications with Coleman, that they had authority to agree to the $10,000 settlement. When questioned about the settlement negotiations and why she decided to seek different representation, Coleman testified, "[Counsel 1] said, uh, how about five thousand dollars for your pocket, is what I heard the first time and the second day it was ten thousand, so I am thinking the next day it might be fifteen, so, I just was done at that point." Tr. Vol. 2 at 14.

[4]    The trial court issued an order with findings of fact, specifically finding that Counsel 1 had actual and apparent authority to enter into the settlement agreement. Notwithstanding, the court granted Coleman's motion and rescinded its original order to compel compliance. This interlocutory appeal ensued. Additional facts will be provided as necessary.

## Discussion and Decision

[5]    Todd contends that the trial court erred in granting Coleman's motion to reconsider. A trial court has the inherent power to reconsider, vacate, or modify any previous order so long as the action remains *in fieri*, meaning that it is "pending resolution." *Pond v. Pond*, 700 N.E.2d 1130, 1135 (Ind. 1998); *Stephens v. Irvin*, 734 N.E.2d 1133, 1135 (Ind. Ct. App. 2000), *trans. denied* (2001). Here, the trial court's order included specific findings of fact. When a trial court issues specific findings sua sponte, the findings control our review and the judgment as to the issues those findings cover; for all other issues, we apply a general judgment standard. *State Farm Ins. Co. v. Young*, 985 N.E.2d 764, 766 (Ind. Ct. App. 2013). We apply a two-tiered standard of review, determining first whether the evidence supports the findings and then whether the findings support the judgment. *Id*. We review the findings for clear error and will reverse when our review of the record leaves us with a firm conviction that a mistake has been made. *Id*. We neither reweigh evidence nor reassess witness credibility. *Id*. While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id*.

Coleman sought and was granted rescission of the trial court's previous order to compel compliance with the $10,000 settlement agreement. This Court has stated,

> Indiana strongly favors settlement agreements and if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement. Settlement agreements are governed by the same general principles of contract law as other agreements. Generally, a settlement agreement is not required to be in writing.

*Sands v. Helen HCI, LLC*, 945 N.E.2d 176, 180 (Ind. Ct. App. 2011) (citations omitted), *trans. denied*.

Here, the trial court found, in pertinent part, as follows:

> 3. Plaintiff, Tonji Coleman's counsel Kelly Leeman, had actual and apparent authority to enter into the settlement agreement that is the subject of this dispute.
>
> 4. It is clear from the record of the proceedings that the Plaintiff, Tonji Coleman, has never signed the terms of any settlement agreement nor has she released any claims that she has, or may have, against the Defendant.
>
> 5. The testimony provided by Plaintiff, Tonji Coleman, on July 3, 2018, made it clear to the Court that she is not prepared to settle her dispute against the Defendant in this case.
>
> 6. Equally compelling is the testimony of Tonji Coleman's lawyers, Kelly Leeman and Amber Garrison [Counsel 1].
>
> 7. Mrs. Garrison's testimony in open court convinces this Court

that she maintained her professional responsibility to her client, Tonji Coleman, in several conversations leading up to the settlement offer of $10,000 which is a part of the record of this proceeding.

8. The evidence is clear that Plaintiff, Tonji Coleman, did not stay in regular contact with her counsel, moved her residence to a different state and reached a point of frustration with the litigation that compelled her to ask [Counsel 1], to "get the case over with."

9. Prior to making the settlement offer of $10,000, the evidence supports a finding that Ms. Coleman did not fully cooperate in the litigation of the matter, specifically, efforts to mediate the case were continued on three separate occasions due to the Plaintiff's inability or refusal to follow the request of [Counsel 1] and participate in scheduled mediation.

10. Notwithstanding the foregoing, Ms. Coleman has a right to have her case against the Defendant tried to a jury with [Counsel 2], and forcing her to comply with the terms of the settlement agreement would not adequately protect her due process rights.

11. Ms. Coleman … ha[s] the right to pursue this litigation to conclusion on whatever terms are suggested by [Counsel 2], including a trial of the issue to a jury.

….

13. This order should not be construed by any person or under any set of facts as a conclusion that the Plaintiff, Tonji Coleman, was not adequately represented by [Counsel 1].

Appealed Order at 1-2.

[8] Todd maintains that finding 3, that Counsel 1 had actual and apparent authority to enter into the settlement agreement on Coleman's behalf, contradicts the trial court's ultimate decision to rescind its order compelling Coleman to comply with the settlement agreement. We agree. "Actual authority is created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." *Fid. Nat'l Title Ins. Co. v. Mussman*, 930 N.E.2d 1160, 1165 (Ind. Ct. App. 2010), *trans. denied* (2011). Actual authority focuses on the belief of the agent and may be express, implied, or created by acquiescence. *Id*. With respect to apparent authority, there must be a manifestation by the principal to support a reasonable belief and inference of authority. *Id*.

[9] Coleman relies on *Bay v. Pulliam* in asserting that her decision to retain Counsel 1 did not automatically constitute implied authority to settle her claim. 872 N.E.2d 666, 668 (Ind. Ct. App. 2007). It is well settled that an attorney may not settle a claim without the client's consent. *Id*. However, unlike in *Bay*, the trial court here specifically found that Counsel 1 had "actual and apparent authority to *enter into the settlement agreement that is the subject of this dispute*." Appealed Order at 1 (emphasis added). Moreover, in *Bay*, information as to the conversations between the client and attorney was not presented through testimony or any other type of evidence but was merely referenced during counsel's argument to the court. 872 N.E.2d at 668. In contrast, here,

Coleman and both Counsel 1 attorneys testified at the hearing concerning the settlement offers.

[10] Leeman testified that Coleman had authorized the firm to settle for $5000, explaining, in relevant part,

> [] Leeman:  She got an offer for five (5) thousand dollars that was submitted to her …. [B]ecause of her circumstances she wanted to take it and told us to take the five (5) thousand.  I made the offer back, at least ten (10) thousand, so, cause if she was desperate to get some money, five (5) thousand was way under what it ought to be in my view and the amount of time and money we had involved in it.  But if her circumstances were such that she wanted it done and over with then …
>
> [PLAINTIFF'S COUNSEL]:  You made that ten (10) thousand dollar offer on you own then, if she want[ed] five (5) you just tried to get more for her and you made the ten (10) thousand dollar offer on your own?
>
> [] Leeman:  Yes.

Tr. Vol. 2 at 27.

[11] Garrison, the associate assigned to the case, testified, "it was my understanding that Tonji was ready to put the case to bed, and yes, that she was fine with that offer …. I did not have a doubt at the time …. [S]he was ready to be done." *Id.* at 34, 40.  She also testified that her firm "did not just make an offer of ten thousand (10,000) dollars … without discussing it with our client.  We, I discussed it [with] Tonji." *Id.* at 44.

[12]     Finally, when asked if she ever told Counsel 1 to settle the case for $10,000, Coleman responded, "I told them that they could do whatever they have been doing to assist me []as my lawyers because I didn't know what was going on and it was a bit confusing[.]" *Id.* at 11. The foregoing evidence, which we may not reweigh, is sufficient to support the trial court's specific finding that Counsel 1 had actual and apparent authority to enter into the settlement agreement on Coleman's behalf. As for the second tier of our review, we conclude that the trial court's ultimate decision to rescind its original order is not supported by the findings. Because the court's order is internally contradictory, we reverse and remand for proceedings consistent with this decision.

[13]     Reversed and remanded.

Vaidik, C.J., and Mathias, J., concur.