Laurie (Lori) **BATCHELOR** and **Indiana Department of Correction, Appellants (Third–Party Defendant and Defendant/Third–Party Plaintiff),**

v.

**Sharon BATCHELOR, Appellee–Plaintiff.**

No. 11A01–0512–CV–586.

Court of Appeals of Indiana.

Aug. 28, 2006.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant Indiana Department of Correction.

Robert F. Hunt, Hunt, Hassler & Lorenz LLP, Terre Haute, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Indiana Department of Correction (DOC) appeals from the trial court's entry of judgment in favor of appellee-plaintiff Sharon Batchelor.[1] In particular, the DOC contends that the trial court erred in finding that it breached a contractual duty to Ronald Batchelor, Sharon's deceased husband. Concluding that the trial court improperly found that the DOC had a contractual responsibility to Ronald to ensure that he effected the appropriate beneficiary changes following a divorce, we reverse the judgment of the trial court.

### FACTS

Ronald began working for the DOC in 1965. Laurie and Ronald were married on October 12, 1974, and they remained married for over seventeen years. During the relevant period of time, the State of Indiana and the American United Life Insurance Company (AUL) entered into group term life insurance policies providing life insurance benefits for certain state employees. In 1985, Ronald designated Laurie as his beneficiary for basic life coverage through the State's AUL policy.

The decree dissolving Laurie and Ronald's marriage was entered on May 8, 1992, and on May 9, 1992, Ronald married Sharon. On May 12, 1992, Ronald designated Sharon as his primary beneficiary for his Public Employees' Retirement Fund (PERF) benefits. On June 5, 1992, Ronald enrolled in dependent insurance on Sharon's life in the amount of $5000, subsequently increasing the enrollment amount to $10,000. On June 9, 1992, Ronald designated Sharon as his beneficiary in the amount of $10,000 of supplemental life insurance through the State's AUL policy.

Ronald died on June 5, 2002. Following his death, Laurie received a check in the amount of $75,000 from AUL based on his basic life insurance coverage through the State's AUL policy. Laurie was surprised

---

1. Appellant-third-party-defendant Laurie Batchelor requested and received three extensions of time in which to file her appellant's brief. But she attempted to file her brief nearly twenty days after the date required by the third extension of time and moved that we accept her untimely brief. We denied her motion and returned her briefs. Consequently, Laurie has neither filed an appellate brief nor joined in the DOC's.

when she received the check because she had expected Ronald to remove her and add Sharon as his beneficiary following the divorce, but when she called AUL, it informed her that she was the designated beneficiary.

On August 13, 2003, Sharon filed a complaint against the DOC, alleging that it breached a contractual obligation to Ronald and that Sharon was damaged as a result. Essentially, Sharon argues that the DOC breached its duty by failing to give Ronald the proper forms and failing to ensure that he completed those forms so that his intended beneficiary designations would be accomplished. On March 11, 2004, the DOC filed a third-party complaint against Laurie, alleging that Laurie had been unjustly enriched by the life insurance payment and asking that she be required to reimburse the DOC for the full $75,000 if the trial court determined that Sharon should have received the basic life benefit and that the DOC was responsible for Ronald's mistake. On October 13, 2004, Sharon amended her complaint and added Laurie as a defendant.

The trial court held a bench trial on December 16, 2004. Pursuant to Sharon's request, the trial court entered findings of fact and conclusions of law, which read, in pertinent part, as follows:

> 15. Pursuant to a master agreement between the State of Indiana and [AUL], the State of Indiana contractually agreed to accept the responsibility for providing notice to AUL of life insurance beneficiary designations, and any changes thereto, for State employees and the State of Indiana designated the [DOC] to perform those obligation[s] for [DOC] employees.
>
> * * *
>
> 19. Ronald's actions in changing the beneficiary of his [PERF] benefits, to his new wife Sharon immediately after their marriage, while not changing the beneficiary designation for the basic life insurance policy either at that time, or at the time that he acquired supplemental life insurance policy protection which named Sharon as a beneficiary, supports the reasonable inference that Ronald was led to believe or reasonably believed that he was changing the beneficiary on his basic insurance policy at the time he completed the form on May 12[,] 1992 because he was not provided with sufficient information and/or forms to do so by the [DOC]'s employees designated to do so.
>
> 20. Ronald's decision not to obtain mortgage life insurance protection, when he and Sharon purchased their residence in Brazil, based upon his representation that sufficient life insurance protection was available to pay off the mortgage through his employment, supports a reasonable inference that Ronald believed that he had earlier changed his beneficiary for the basic life insurance benefits to Sharon.

### CONCLUSIONS OF LAW

> 1. The [DOC] had the contractual duty to provide information and forms to Ronald to enable him to carry out his intended designation of Sharon as his beneficiary under his basic life insurance policy.
>
> 2. The [DOC] breached its contractual duty to Ronald by failing to provide him proper information, and the necessary forms, to complete the change of beneficiary to Sharon, at such time as the [DOC] provided information and forms to enable him to make the proper designation of Sharon as Ronald's beneficiary under his PERF plan and his supplemental life insurance.

3. Sharon was a third-party beneficiary of the contractual relationship between the [DOC] and Ronald.

*  *  *

JUDGMENT

Based upon the preceding Findings of Fact and Conclusions of Law, the Court determines that the Plaintiff–Cross-claimant [sic], Sharon Batchelor, shall have judgment against the Defendant, [the DOC], in the sum of $75,000.00, plus the cost of this action.

Appellant's App. p. 9–12. The DOC now appeals.

## DISCUSSION AND DECISION

The DOC argues that the trial court erred in entering judgment in favor of Sharon. Specifically, it argues that the trial court erred in (1) concluding as a matter of law that the DOC had a contractual duty to Ronald to ensure that he effected appropriate beneficiary changes following his divorce, and (2) concluding as a matter of fact that the DOC breached its duty to Ronald.

■ As we consider these arguments, we observe that where, as here, the trial court entered findings of fact and conclusions of law at a party's request following a bench trial, we may affirm the judgment on any legal theory supported by the findings. *Shriner v. Sheehan,* 773 N.E.2d 833, 841 (Ind.Ct.App.2002). While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.* We will not set aside the trial court's judgment unless we conclude that it is clearly erroneous, meaning that we are firmly convinced that the trial court committed error. *Lakes and Rivers Transfer v. Rudolph Robinson Steel Co.,* 795 N.E.2d 1126, 1131 (Ind.Ct.App.2003). We will af-

firm if there is sufficient evidence of probative value to support the decision, viewing the evidence most favorable to the judgment and the reasonable inferences that may be drawn therefrom. *AmRhein v. Eden,* 779 N.E.2d 1197, 1206 (Ind.Ct. App.2002).

■■ The existence of a contract is a question of law. *Orr v. Westminster Village N., Inc.,* 689 N.E.2d 712, 721 (Ind. 1997). The basic requirements for a contract include offer, acceptance, consideration, and a meeting of the minds of the contracting parties. *Ochoa v. Ford,* 641 N.E.2d 1042, 1044 (Ind.Ct.App.1994).

■ Here, Sharon insists, and we agree, that there was a contractual relationship between the DOC and Ronald. *Whinery v. Roberson,* 819 N.E.2d 465, 472–74 (Ind. Ct.App.2004) (finding contractual employment relationship between the State and its employees), *trans. dismissed.* But reaching that conclusion stops short of answering the primary question presented herein, namely, what specific contractual duties were owed to Ronald by the DOC. In *Whinery,* we held that State employees may seek compensation from the State by suing for breach of contract if they are entitled to compensation as a result of a specific statutory right[2] or a specific term of a written contract. *Id.; see also Williams v. Riverside Cmty. Corr. Corp.,* 846 N.E.2d 738, 745–51 (Ind.Ct.App.2006) (analyzing State employee's breach of contract claim against the State by referring to employee's rights under Wage Claims Statute and specific understandings between employer and employee regarding pay rate and other benefits).

Here, Sharon argues, and the trial court agreed, that as part of the contractual relationship between the DOC and Ronald

---

**2.** Sharon does not direct us to a relevant    statutory right, and indeed, we can find none.

the DOC "assumed the responsibility to handle changes in beneficiaries for employees," appellee's br. p. 4, which included a requirement that the DOC's payroll clerk provide "information and forms," *id.* p. 11, to enable employees to do so with respect to all "intended" beneficiaries, appellant's app. p. 11. There is nothing in the record, however, supporting a conclusion that the DOC has assumed any such contractual responsibility. Indeed, there is nothing in the record purporting to be a written contractual agreement between the DOC and its employees regarding any terms of employment, including life insurance beneficiary changes. Quite simply, the record is silent on the issue. Additionally, Sharon does not direct us to a statute placing such a requirement on the DOC, and indeed, we can find none. We simply cannot conclude, based upon this record, that the DOC has a contractual obligation to provide forms to its employees seeking to effect a change to their designated life insurance beneficiaries.

The only agreement that is in the record and to which the parties refer is the contract between AUL and the State,[3] which provides that the only relevant contractual duty or obligation of the DOC is to send written beneficiary designations to AUL if the employee chooses to file his written designations through his employer. Appellant's App. p. 219. In fact, the agreement also provides that the policyholder, on his own, may file a written request to change a beneficiary. *Id.* Clearly, therefore, nothing in this contract imposes upon the DOC a duty to ensure that each of its employees made all of the beneficiary designations that the employee may have been contemplating in his own mind at any particular point in time.[4]

We can find nothing in the record, therefore, establishing a meeting of the minds with respect to the obligation imposed by the trial court upon the DOC. Consequently, we find as a matter of law that there is no contractual term requiring the DOC to ensure that its employees' intended beneficiary designations are accomplished. Pursuant to the evidence in the record, the DOC's only relevant contractual obligation is to send the forms actually completed by an employee to AUL.

Although the result may be unfortunate, the simple reality is that Ronald made a mistake. Either he forgot to mention to the DOC payroll clerk that he wished to change the designated beneficiary of his basic life insurance coverage from Laurie to Sharon or he did mention it but neither inspected the forms he completed nor realized that he had not filled out a form regarding his basic life insurance coverage. Either way, nothing in the record supports a conclusion that the DOC is contractually required to insure that mistake. Thus, we conclude that the trial court erred in entering judgment in favor of Sharon.[5]

---

3. As an aside, we note that the versions of the contract between AUL and the State offered into evidence by Sharon are not the relevant versions. Sharon introduced agreements that were effective July 1, 1997, and July 1, 2001, but did not introduce the agreement in effect in 1992, when Ronald made the changes in his beneficiary designations. We will proceed under the assumption, however, that the provisions of the 1997 and 2001 agreements are substantially the same as those that were in place in 1992.

4. And, indeed, Sharon insists that her argument is in no way based upon the contract between the State and AUL. Appellee's Br. p. 3–5.

5. Inasmuch as we have concluded that the trial court erred as a matter of law, we need not reach the DOC's arguments regarding the trial court's findings of fact.

The judgment of the trial court is reversed and remanded with instructions to vacate the order requiring the DOC to pay for the costs of the action, to enter judgment for the DOC, and to dismiss the DOC's third-party complaint against Laurie with prejudice.

VAIDIK, J., and CRONE, J., concur.