Debra K. SANDS, Appellant–Defendant,

v.

HELEN HCI, LLC, Appellee–Plaintiff.

No. 06A01–1005–CC–231.

Court of Appeals of Indiana.

Feb. 23, 2011.

Transfer Denied June 16, 2011.

Kevin W. Betz, Sandra L. Blevins, Betz & Associates, Indianapolis, IN, Attorneys for Appellant.

Daniel R. Shulman, Gray Plant Mooty Mooty & Bennett, P.A., Minneapolis, MN, Temporary Admission.

Richard A. Kempf, Steven C. Shockley, Taft Stettinius & Hollister LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

This Court granted Debra K. Sands ("Sands") permission to bring an interlocutory appeal of an order of the Boone County Superior Court denying her motion to enforce a settlement agreement between herself, Helen HCI, LLC ("Helen HCI"), Haverstick Consulting, Inc. ("Haverstick") and Kratos Defense & Security Solutions, Inc. ("Kratos"), providing for dismissal with prejudice of Helen HCI's complaint against Sands in the Boone County Superior Court and dismissal with prejudice of Sands' complaint against Helen HCI, LLC, Haverstick, and Kratos in the Circuit Court of Eau Claire County Wisconsin.[1] We reverse.

### Issue

Sands presents a single issue for review: Whether the trial court erred in determining that no valid settlement agreement was entered into by the parties and refusing to enforce its term of dismissal.

### Facts and Procedural History

On November 3, 2008, Sands, who is a Wisconsin resident, filed a complaint in the Eau Claire County Circuit Court of Wisconsin against Menard, Inc., John Menard, Jr. (the founder and majority owner of the home improvement chain Menard's) ("John"), and various other corporate entities in which John had a financial interest. Sands' complaint sought an award of a portion of the assets accumulated during her eight-year cohabitation with John.

On January 30, 2009, one of the named corporate defendants, Managing Member [of MH Equity], filed a complaint against Sands in the Marion County Superior Court for disgorgement of attorney's fees paid to Sands in her capacity as attorney for MH Equity and Managing Member. Steven Shockley ("Shockley"), counsel for MH Equity and Managing Member, contacted Daniel Shulman ("Shulman"), counsel for Sands, via e-mail to propose that Sands dismiss with prejudice her claims in the Wisconsin case in exchange for Managing Member dismissing with prejudice its claim against Sands in the Indiana case. After a series of e-mails, Shockley denied that a settlement had been reached. In settlement enforcement proceedings in Wisconsin and in Marion County, Indiana, the claims were eventually dismissed despite MH Equity/Managing Member's opposition. This Court affirmed the dismissal in Indiana. *MH Equity Managing Member, LLC. v. Sands*, 938 N.E.2d 750, 752 (Ind.Ct.App.2010).

On March 4, 2009, Helen HCI filed a complaint against Sands in the Boone County Superior Court, alleging that she had tortiously interfered with Helen HCI's right to receive payment from Kratos for its Haverstick shares.[2] More specifically,

---

1. Haverstick and Kratos have not opposed the dismissal and are not active parties to this interlocutory appeal.

2. Helen HCI was previously the largest shareholder of Haverstick. Effective December 31, 2007, Kratos acquired all of Haverstick's stock in a merger transaction, in consideration of which Helen HCI and the other for-

the complaint alleged that Sands had filed a frivolous claim in Wisconsin and caused Kratos to withhold payment under a holdback provision in a merger agreement.

With the MH Equity/Managing Member/Sands e-mail communications as background, Shulman wrote to Shockley with regard to Haverstick/Kratos/Helen HCI/Sands litigation:

> Steve, something else for you to consider. Haverstick and Kratos want to get out of the Deb Sands case in Wisconsin through a dismissal with prejudice. I have dropped them as defendants in Wisconsin, but I can't let them out with prejudice and execute mutual releases because of the Helen HCI case in Indiana, where I will have to third party them in as defendants, because they have everything to do with the reason any payments due were not made to Helen HCI. If payments weren't made, the blame lies not with Deb Sands, but with Haverstick and Kratos. If you dismiss the remaining Indiana case, however, then I have no problem with a dismissal with prejudice and mutual releases for Haverstick and Kratos. Let me know your views.

(App.68.) Shockley responded (with a copy to Paul Cranley, counsel for Haverstick and Kratos):

> Dan—Helen HCI, LLC will agree to dismissal of its Indiana lawsuit against Ms. Sands with prejudice and will execute a mutual release of claims with her provided Sands will dismiss her claims against Haverstick and Kratos with prejudice in the Wisconsin case and release Havestick [sic] and Kratos from those claims. It is probably best to

have three sets of release agreements: Sands—MHE/Managing Member; Sands—Helen HCI; and Sands—Haverstick/Kratos. Please advise. Thanks.

(App.67–68.) Shulman responded: "Deal. Jeremy [Johnson] will work with you to get [sic] and the other counsel to get papers done." (App.67.) On the same day, Shockley sent to Shulman, with copies to Haverstick/Kratos counsel, drafts of the Helen HCI—Sands Stipulation for Dismissal of the Boone County action. Upon transmittal of documents related to Sands, MH Equity, and Managing Member, Shockley concluded his e-mail with a reference to the instant matter:

> When we get this agreement finalized, I believe it will be a simple matter of substitution to get the Sands—Helen HCI agreement done. Thanks.

(App.60.) Later that day, Johnson transmitted to Shulman a Stipulation for Dismissal with Prejudice of Kratos and Haverstick, a proposed order, and a Settlement Agreement and Release. Soon thereafter, Shockley communicated an intention to proceed with the Managing Member/Sands lawsuit, which had negative implications for the immediate resolution of the Helen HCI/Haverstick/Kratos/Sands litigation. Nonetheless, on December 8, 2009, Cranley e-mailed Shockley, Johnson, and Shulman, attaching a signed Stipulation for Dismissal with Prejudice of Kratos and Haverstick, a proposed order, and a Settlement Agreement and Release.

On December 11, 2009, Shockley responded to Shulman, Cranley, Johnson, and other counsel:

> have been paid to Plaintiff and the other Previous Equityholders, but for Defendant's frivolous claims against HCI and Kratos in the Complaint, was $588,630 in cash and approximately $1,400,000 in stock[.]" (App.36.)

mer shareholders of Haverstick expected to receive a January 2, 2009 installment payment from Kratos of cash and stock. Helen HCI's complaint alleged in relevant part, "The Holdback Consideration that would

The draft settlement documents Jeremy tendered to me for the first time on December 8 are not acceptable, and therefore the parties have no enforceable settlement agreement. If you decide nevertheless to file a motion to enforce, please serve a copy on me by email.

(App.99.) Sands moved the Boone County Superior Court to enforce a settlement agreement. Kratos and Haverstick did not oppose dismissal. Helen HCI and Sands appeared for a hearing on March 16, 2010, at which argument of counsel was heard. Counsel for Sands contended that Helen HCI and Sands had reached a settlement agreement, having agreed to all material terms. Counsel for Helen HCI contended that the exchanged e-mails instead constituted an agreement to agree.

On March 23, 2010, the Boone County Superior Court entered a "minute entry" providing: "The Court now DENIES Defendant's Motion to Enforce Settlement Agreement. Notify." (App.8.) This appeal ensued.

### Discussion and Decision

Sands contends that the trial court erred as a matter of law by refusing to enforce a valid settlement agreement. Helen HCI responds that there was no intent to be bound and no agreement with "terms sufficiently definite to be understood and enforced by a court." Appellee's Brief at 7.

Indiana strongly favors settlement agreements and if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement. *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind.2003). Settlement agreements are governed by the same general principles of contract law as other agreements. *Id.* Generally, a settlement agreement is not required to be in writing. *Estate of Skalka v. Skalka*, 751 N.E.2d 769, 771 (Ind.Ct.App.2001).

The existence of a contract is a question of law. *Batchelor v. Batchelor*, 853 N.E.2d 162, 165 (Ind.Ct.App.2006). The basic requirements are offer, acceptance, consideration, and "a meeting of the minds of the contracting parties." *Id.* To determine whether a contract is enforceable, there are two interrelated areas that must be considered: "intent to be bound and definiteness of term." *Wolvos v. Meyer*, 668 N.E.2d 671, 675 (Ind.1996). "[O]nly essential terms need be included in order to render a contract enforceable." *Id.* at 676. Whether the parties intended to execute a subsequent written document is relevant to the determination of intent to be bound. *Illiana Surgery & Medical Center, LLC. v. STG Funding, Inc.*, 824 N.E.2d 388, 394 (Ind.Ct.App.2005). Parties may make an enforceable contract which obligates them to execute a subsequent final written agreement. *Wolvos*, 668 N.E.2d at 674. However, it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the document. *Id.* In other words, the document is understood to be a mere memorial of the agreement already reached and may not contain a material term that is not already agreed on. *Id.*

At the outset, we note the absence of any factual dispute. Although Helen HCI makes a bald assertion that it lacked intent to be bound, no evidence in this regard was presented to the trial court. The trial court heard only argument. We are left in the position of discerning the parties' intent from the written text of the e-mail communications exchanged. *See Barrington Mgm't Co., Inc. v. Paul E. Draper Family Ltd. Partnership*, 695 N.E.2d 135, 140 (Ind.Ct.App.1998) (observing that, if

an ambiguity arises because of language used in the contract rather than extrinsic fact, its construction is purely a question of law). Both parties are in agreement as to the e-mail content, and do not contend that either counsel lacked authority to bind his client.[3]

Initially, Sands' counsel proposed dismissal with prejudice and mutual releases with regard to Wisconsin claims of Sands against Helen HCI, Kratos, and Haverstick in exchange for a reciprocal action for dismissal of Helen HCI's claim against Sands in Indiana. Mirroring the language of dismissal "with prejudice" and "mutual release" of claims, counsel for Helen HCI agreed to the proposed essential terms. (App.67–68.) Sands' counsel responded, "Deal" and advised that documents would be drafted. Accordingly, Sands and Helen HCI agreed to the essential terms (reciprocal dismissals with prejudice, with reciprocal mutual releases) resolving the issues between them.

Helen HCI maintains that no binding settlement agreement was reached because the parties yet anticipated the execution of settlement documents. The releases were to be effective upon the "Effective Date," defined as "the first business day after this Agreement has been executed by all parties." (App.96.) Thus, the releases were to be effected on a future date, as were the dismissals. Nonetheless, as to the contract here at issue, executing the motions to dismiss and the releases would constitute the full performance of the contract, not its formation.

Helen HCI further insists that an offer of "mutual releases," even if accepted, is too indefinite to form a binding settlement contract. For this proposition, Helen HCI relies upon *Janky v. Batistatos*, 559 F.Supp.2d 923 (N.D.Ind.2008). Although Helen HCI acknowledges that *Janky* is not controlling authority, Helen HCI argues that the case presents a persuasive example of the application of Indiana law to find that an "agreement to agree" was reached as opposed to a settlement agreement. *Id.* at 930. We find *Janky* readily distinguishable from the instant case, in that *Janky* involved an offer to settle followed by a written mutual global release draft that added additional and material terms. *Id.* at 928. Specifically, without prior agreement of the parties, the release required that Janky post a $100,000 bond to secure future claims, issue a press release admitting error, convey ownership of the disputed song, and pay all court-ordered sanctions. *Id.*

Here, the parties entered into a binding contract which required the subsequent execution of a document memorializing their agreement and there is no uncertainty as to any substantial term of the settlement contract. "A court will not find that a contract is so uncertain as to preclude specific enforcement where a reasonable and logical interpretation will render the contract valid." *Conwell v. Gray Loon Outdoor Marketing Group, Inc.*, 906 N.E.2d 805, 813 (Ind.2009).

---

**3.** Helen HCI specifically "concedes that if its November 30 offer had been limited to dismissal with prejudice of its claims against Sands in the Boone County Action in exchange for Sands' dismissal with prejudice of her claims against Haverstick and Kratos in the Wisconsin Action, the offer would have been sufficiently definite to create a binding agreement upon acceptance by Sands." Ap- pellee's Brief at 9. Helen HCI then argues that the inclusion of a mutual release term within its offer, accepted by Sands' counsel with the word "deal," changes the outcome because "an offer of 'mutual releases,' even if accepted, is too indefinite to form a binding settlement agreement." Appellee's Brief at 10.

The trial court erred in summarily concluding that no enforceable settlement agreement existed.

Reversed.

RILEY, J., and KIRSCH, J., concur.