# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 26 2019, 5:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Kimberly A. Jackson
Indianapolis, Indiana

Mark R. Waterfill
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Kevin S. Smith
Brent R. Borg
Church, Church, Hittle & Antrim
Fishers, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Christian Methodist Episcopal Church and Second Episcopal District of the Christian Methodist Episcopal Church, Inc.,

*Appellants-Defendants,*

v.

Kevin P. Grimes, Sr.,

*Appellee-Plaintiff.*

August 26, 2019

Court of Appeals Case No. 18A-PL-2346

Appeal from the Marion Superior Court

The Honorable John M.T. Chavis II, Judge

Trial Court Cause No. 49D05-1211-PL-43306

**Kirsch, Judge.**

Christian Methodist Episcopal Church ("CME") and Second Episcopal District of the Christian Methodist Episcopal Church, Inc. ("Second District") (together, "the Church") appeal the trial court's order granting a motion filed by Kevin P. Grimes, Sr. ("Grimes") requesting enforcement of a settlement agreement and entering judgment against the Church in the amount of $80,000.00. The Church raises the following restated issues on appeal:

> I.    Whether the trial court lacked subject matter jurisdiction over Grimes's claims against the Church;

> II.   Whether the trial court abused its discretion when it denied CME and Second District's motion to vacate the trial court's previous order enforcing the alleged settlement agreement between the parties; and

> III.  Whether the trial court abused its discretion when it awarded $6,456.71 in appellate attorney fees to Grimes.

We affirm.

## Facts and Procedural History

Between June 2007 through June 2012, CME and Second District appointed Grimes to five consecutive one-year terms as pastor of Stewart Memorial CME Corporation ("Stewart Memorial"). *Appellants' App. Vol. II* at 132. CME is a not-for-profit religious corporation organized into eleven districts in the United States and Africa including Second District, which is a separate corporation. *Appellants' App. Vol. III* at 5; *Appellants' App. Vol. IV* at 22. Stewart Memorial is

an Indianapolis church within the Second District. *Appellants' App. Vol. IV* at 22.

[4] Under CME's structure, a pastor's salary is established by the local church's steward board and approved by the Quarterly Conference of Second District, which is presided over by a CME Elder. *Appellants' App. Vol. II* at 212; *Appellants' App. Vol. III* at 83. For each year of Grimes's employment, financial accountings and pastoral reports contained information stating that Grimes's salary was $600.00 per week and that Grimes was entitled to 12% of his salary as a pension. *Appellants' App. Vol. II* at 142-51, 230-47. This information was also indicated in the minutes of the Quarterly Conference. *Id.* at 152-53.

[5] When Grimes accepted his appointment, Stewart Memorial was in significant financial trouble. *Id.* at 132, 140, 185. Stewart Memorial paid one of its previous pastors $600.00 per week before she left to organize her own church and took much of Stewart Memorial's membership with her, which is when Stewart Memorial's downward financial spiral began. *Appellants' App. Vol. IV* at 133, 139-40, 236. The $600.00 per week salary figure remained in place for the pastor who served after her and before Grimes; however, that pastor never was paid due to Stewart Memorial's poor financial situation. *Id.* at 205-06. On August 6, 2007, Grimes reportedly wrote a letter to Second District Bishop E. Lynn Brown in which Grimes stated: "[D]ue to the extreme and severe financial conditions[,] I[,] as the Sr. Pastor[,] have made the temporary decision to defer the church pastoral salary obligations, until at such time I determine we can recover from this desperate financial situation." *Appellants' App. Vol. II* at

80. Grimes and Stewart Memorial's Board of Stewards understood Grimes was not working for free and would eventually be paid his deferred salary. *Id.* at 132-33, 140, 188, 192-93. Although Grimes claimed years later that he entered into a single oral agreement with Stewart Memorial's Board of Stewards in 2007 to pay him $600.00 weekly, church officials with CME and Second District denied any such agreement ever existed. *Appellants' App. Vol. IV* at 42, 44-45; *Appellants' App. Vol. V* at 5.

[6] On October 30, 2011, the Quarterly Conference was chaired by Reverend Charles King ("Reverend King"), a presiding elder of CME and Second District. *Appellants' App. Vol. II* at 92. At that Quarterly Conference, Reverend King stated it was Stewart Memorial's duty to pay Grimes his salary and pension. *Id.* at 93, 167-70, 221. Reverend King was aware of Stewart Memorial's financial condition but stated that Stewart Memorial should set a salary and keep a record of the amounts owed to Grimes. *Id.* at 221; *Appellants' App. Vol. III* at 14. After the Quarterly Conference, Grimes instructed Stewart Memorial staff to draft checks to Grimes in amounts Grimes specified for his services dating back to his first appointment. *Appellants' App. Vol. III* at 120-21; *Appellants' App. Vol. V* at 9-10. Grimes and his brother-in-law, who was a steward of Stewart Memorial, maintain that, at the October 2011 Quarterly Conference, Reverend King directed Stewart Memorial to write checks to Grimes for his services as a promise to pay, and their position was supported by purported minutes of the Quarterly Conference drafted by Grimes. *Appellants' App. Vol. II* at 92, 133-34, 167-68. Reverend King challenged the accuracy of

the minutes and reported receiving the minutes only after Grimes's departure from Stewart Memorial. *Appellants' App. Vol. IV* at 41-42.

[7] Stewart Memorial drafted checks to Grimes totaling $165,276.00. *Appellants' App. Vol. II* at 134, 157-66. Grimes knew Stewart Memorial's accounts did not contain sufficient funds to cover the checks at the time they were issued. *Appellants' App. Vol. V* at 14-16. Stewart Memorial did not intend for the checks to be cashed, and the recording steward kept the checks in her desk until Grimes requested that she give them to him. *Appellants' App. Vol. III* at 121; *Appellants' App. Vol. IV* at 141-42.

[8] In July 2012, prior to the expiration of Grimes's fifth term as pastor of Stewart Memorial, Reverend King offered Grimes pastor positions at two different churches, another Indianapolis church and a Cincinnati church. *Appellants' App. Vol. V* at 2,17. Grimes rejected those positions, was not reappointed as pastor of Stewart Memorial, and left his employment at Stewart Memorial on July 27, 2012. *Appellants' App. Vol. IV* at 44, 249; *Appellants' App. Vol. V* at 17. On July 20, 2012, Grimes cashed one of the checks written to him by Stewart Memorial for $600.00, and on July 30, 2012, he cashed another for $600.00. *Appellants' App. Vol. IV* at 238. An overdraft occurred as a result of the processing of those checks, and Stewart Memorial stopped payment on the other checks issued to Grimes. *Id.* at 161, 222.

[9] On November 2, 2012, Grimes filed a complaint against CME, Second District, and Stewart Memorial, alleging breach of contract and violation of Indiana's

Wage Payment Statute and Wage Claims Statute. *Appellants' App. Vol. II* at 36-39. CME and Second District filed separate motions to dismiss Grimes's complaint, alleging that the Wage Payment Statute and Wage Claims Statute did not apply because Indiana's minimum wage laws do not apply to pastors and the trial court lacked subject matter jurisdiction over Grimes's claims because if the trial court adjudicated those claims, it would infringe the First Amendment rights of CME and Second District to adjudicate matters concerning ecclesiastical law. *Id.* at 47-54. The trial court denied the motions to dismiss. On April 23, 2013, Grimes filed an amended complaint to add an unjust enrichment claim. *Id.* at 71-75.

[10] In September 2014, Grimes filed a motion for partial summary judgment on all claims except unjust enrichment. *Id.* at 115-16. Grimes argued, among other things, that his claims were not barred by the First Amendment. *Id.* at 126-28. On November 21, 2014, CME and Second District filed separate cross motions for summary judgment, again arguing that Grimes's claims were barred by the First Amendment. *Appellants' App. Vol. III* at 4-10. On June 8, 2015, the trial court denied all of the motions for summary judgment, specifically stating that "the Court can apply neutral principles of law without becoming excessively entangled in religious affairs in violation of the First Amendment." *Appellants' App. Vol. V* at 52-54. Grimes, CME, and Second District each filed motions for permissive interlocutory appeal of the trial court's order, and this court denied the motions. *Appellants' App. Vol. II* at 21-23.

[11]     The trial court set a jury trial for May 23, 2017. *Id.* at 24. Three weeks before the trial date, counsel for the Church and Grimes met in a settlement conference with their clients available by phone. *Appellants' App. Vol. V* at 55-56. On June 9, 2017, Grimes filed a motion to enforce settlement agreement and a motion to set the matter for a hearing. In the motion, Grimes alleged the following occurred at the settlement conference. After initial discussion, Grimes offered to settle his claims against the Church for $90,000.00. *Id.* at 56. The Church counteroffered for $40,000.00 and a confidentiality provision. *Id.* Grimes agreed to the confidentiality provision and counteroffered for $80,000.00 paid via an initial reasonable lump-sum payment followed by a reasonable payoff of the balance over time, and an attorney fee provision should the Church fail to pay. *Id.* The Church agreed to the $80,000.00 settlement payment and the attorney fee provision and proposed that the initial payment be $15,000.00 with semi-annual payments of the balance over four years. *Id.* Grimes's counsel then called Grimes to convey the parties' agreement and confirm his approval of the payment terms the Church had recommended. *Id.* As Grimes's counsel was preparing to return to the conference room to convey Grimes's approval of their proposed payment terms, the Church's counsel attempted to rescind the parties' agreement, stating that he only had authority to offer $50,000.00. *Id.*

[12]     The trial court set the motion for a hearing on August 9, 2017. On June 29, 2017, after nineteen days had passed without the Church filing a response to the motion to enforce the settlement agreement, Grimes filed a motion to vacate

the hearing, contending that no hearing was needed because the Church's lack of response demonstrated the facts alleged in Grimes's motion were undisputed and the trial court could rule on the motion based on the evidence Grimes had submitted. *Id*. at 71-72. After fifteen days passed without the Church filing any response or objection to Grimes's motion to vacate hearing, the clerk filed an order from the court granting Grimes's motion and vacating the August 9 hearing. *Appellants' App. Vol. II* at 26; *Appellants' App. Vol. V* at 79. The Church did not file an objection or response to this ruling. *See Appellants' App. Vol. II* at 26. On August 10, 2017, the trial court granted Grimes's motion to enforce settlement agreement and entered judgment against the Church in the amount of $80,000.00 and ordered reasonable attorney fees in enforcing the judgment. *Appellants' App. Vol. V* at 80. Grimes's claims against Stewart Memorial remained pending in the trial court.

[13] On September 9, 2017, the Church filed a motion to correct error, arguing the trial court's August 10 order entering judgment "for a set amount does not properly include the terms that were part of the settlement conference and does not accurately set the terms of the deal." *Id*. at 123-24. On September 15, 2017, Grimes filed a "Statement in Opposition to Motion to Correct Error," in which he argued that the motion to correct error did not satisfy Trial Rule 59(D) because it did not state the alleged error in specific terms. *Id*. at 126-27. Grimes also argued that the Church had waived any challenge to the motion to enforce settlement agreement because "'[w]hen a [party] does not properly bring an objection to the court's attention so that the court may rule on it at the

appropriate time, he is deemed to have waived that possible error.'" *Id*. at 127 (quoting *Ingram v. State*, 547 N.E.2d 823, 829 (Ind.1989)). Grimes continued:

> If [the Church] disputed the Motion to Enforce, [it] had no fewer than three opportunities to object: first, when the undersigned sent a letter demanding [it] honor the terms of the agreement; second, via standard motion practice by filing an objection to the Motion to Enforce; and third, when Grimes moved to vacate the hearing. [The Church has] had many bites at the apple and declined each opportunity.

*Id*. On September 19, 2017, the Church's motion to correct error was denied. *Appellee's App. Vol. II* at 53.

[14] On October 31, 2017, the Master Commissioner conducted proceedings supplemental, at which the Church argued that the trial court's judgment for the entire $80,000.00 was inconsistent with the terms of the parties' settlement agreement and asked the matter be sent "back to the trial court for clarification." *Tr. Vol. 2* at 32-36. The Master Commissioner granted their request and continued the hearing. *Id*. at 37-38. On November 13, 2017, the trial court issued an order, stating in pertinent part, "[T]here is no legitimate dispute regarding the terms of the settlement agreement or the Court's order enforcing said settlement agreement. The Court stands by and reaffirms its order denying [the Church's] Motion to Correct Error." *Appellants' App. Vol. V* at 135. The order scheduled another proceedings supplemental for December 15, 2017 and ordered the Church to appear in person. *Id*. The Church failed to appear at the proceedings supplemental. *Appellants' App. Vol. II* at 29-30. The

trial court issued "Final Orders in Garnishment" to two garnishee/defendant banks, and from those orders, Grimes collected $56,693.20, which is being held in his attorney's trust account. *Appellants' App. Vol. V* at 137-41; *Appellee's App. Vol. II* at 57, 61.

[15] On January 25, 2018, the Church appealed the trial court's "Final Orders in Garnishment" and stated in their notice of appeal that this court had jurisdiction because the "Final Orders in Garnishment" were final judgments. *Appellee's App. Vol. II* at 30. A month later, through its new appellate counsel, the Church filed an amended notice of appeal that again stated our court had jurisdiction because the court's "Final Orders in Garnishment" were final judgments. *Id.* at 38. On May 11, 2018, the Church filed a motion seeking to dismiss its appeal because, it asserted that the trial court's "Final Orders in Garnishment" were not "final judgments" and argued the garnishment orders were improper because the trial court's order enforcing the parties' settlement agreement did not constitute a final judgment and proceedings supplemental "necessarily require a final judgment to execute." *Appellants' App. Vol. V* at 148-50.

[16] Grimes objected to the motion to dismiss the appeal based on his contentions that, under Indiana law, an order issued as a result of proceedings supplemental is a "final judgment" for purposes of appellate jurisdiction and a "final judgment" against all parties is not required for a plaintiff to seek proceedings supplemental on a judgment entered against some of the parties. *Appellants' App. Vol. VI* at 7-19. Alternatively, Grimes requested that this court award

appellate attorney fees because it would be unfair for Grimes to bear the financial costs of the Church's tactical mistake in filing an appeal, especially when Grimes was prepared to defend the garnishment orders on appeal and because the trial court's order allowed for reasonable attorney fees in enforcing the judgment. *Id*. at 20. On June 6, 2018, this court issued an order granting the Church's motion to dismiss and granting Grimes's request for appellate attorney fees, ordering the trial court to determine the amount to be awarded. *Appellee's App. Vol. II* at 51-52.

[17] On July 5, 2018, Grimes filed a motion with the trial court for reasonable attorney fees, requesting $6,456.71. *Appellants' App. Vol. VI* at 2-4. The Church filed a motion in opposition, arguing that the attorney fees should be reduced to $2,594.95. *Id*. at 43-44. The trial court granted attorney fees in the full amount requested by Grimes, stating "Court finds that the amount of appellate attorney fees is reasonable for the services provided and made necessary by [the Church's] initiating an appeal that they later sought and were granted dismissal without prejudice by the Indiana Court of Appeals." *Id*. at 99.

[18] On July 24, 2018, the Church filed a motion to vacate, requesting that the trial court vacate the August 10, 2017 order enforcing the settlement agreement. *Id*. at 45-49. In its motion, the Church contended the trial court's judgment should be vacated because the trial court lacked subject matter jurisdiction, the alleged settlement agreement never occurred, the alleged settlement agreement was unenforceable, and the judgment was erroneously entered without hearing and was inconsistent with Grimes's allegations of an agreement. *Id*. at 45-75. On

August 29, 2018, the trial court denied the Church's motion to vacate and entered final judgment against the Church. *Id*. at 100-01. The Church now appeals.

# Discussion and Decision

## I. Subject Matter Jurisdiction

[19] The Church initially argues that the trial court lacked subject matter jurisdiction over Grimes's claims. The Church contends that the First Amendment precluded Grimes's claims against it because the determination of such issues would require inquiry into ecclesiastical law, doctrine, or polity. The Church claims that Grimes's claims cannot be resolved without interpretation of religious, doctrinal, and ecclesiastical principles, specifically contained in the Book of Discipline of the Christian Methodist Episcopal Church ("the Discipline"). As support for its claim, the Church notes that the Discipline provides the procedures under which pastors receive wages and benefits and how salary disputes are resolved.

[20] It has long been held that the First Amendment to the United States Constitution requires civil courts to refrain from interfering in matters of church discipline, faith, practice, and religious law. *Stewart v. Kingsley Terrace Church of Christ, Inc.*, 767 N.E.2d 542, 546 (Ind. Ct. App. 2002) (citing *Watson v. Jones*, 80 U.S. 679, 727 (1871)). "Thus, civil courts are precluded from resolving disputes involving churches if 'resolution of the disputes cannot be made without extensive inquiry . . . into religious law and polity . . . .'" *Id*. (quoting *Serbian E.*

*Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709 (1976)). However, the First Amendment does not entirely prohibit courts from deciding issues related to religious organizations. *Id*. (citing *Konkle v. Henson*, 672 N.E.2d 450, 455 (Ind. Ct. App. 1996)). Instead, courts can apply neutral principles of law to churches without violating the First Amendment. *Id*. (citing *Konkle*, 672 N.E.2d at 455). The First Amendment only prohibits the court from determining underlying questions of religious doctrine and practice. *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 714 N.E.2d 253, 262 (Ind. Ct. App. 1999), *trans. denied*.

[21] In *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286 (Ind. 2003), our Supreme Court held that a court with general authority to hear matters like employment disputes is not deprived of subject matter jurisdiction because the defendant pleads a religious defense. *Id*. at 290. Here, Indiana courts, including the Marion Superior Court and this court, have the general authority to hear matters such as Grimes's claims regarding breach of contract and unjust enrichment in an employment dispute. The First Amendment claims of the Church did not deprive the trial court of its subject matter jurisdiction over Grimes's claims.

[22] The Church asserts that determination of whether Grimes was an employee and, therefore, the resolution of his claims, would require a prohibited inquiry into the Discipline because the Discipline contains procedures regarding a pastor's compensation. However, the Discipline's provisions that the Church point to as support for their arguments are procedural and administrative and do not concern church doctrine or religious law. Grimes's claims did not hinge

on a review of his performance as a pastor or an interpretation of ecclesiastical law and polity, but only on whether a contract existed that required CME, Second District, and Stewart Memorial to pay Grimes wages or whether unjust enrichment occurred when Grimes was not paid for his services as a pastor. We, therefore, conclude that the trial court had subject matter jurisdiction over Grimes's claims, and it properly rejected the Church's challenges to the contrary.[1]

## II. Enforcement of Settlement Agreement

[23] The Church next argues that the trial court erred when it entered judgment on Grimes's motion to enforce settlement agreement without having first held an evidentiary hearing. It contends that Grimes's motion was erroneously granted based on a flawed interpretation of Marion County Local Rule LR49-TR5-203. The Church asserts that LR49-TR5-203 does not expressly require a written response, but merely established a deadline for filing a written response if the opposing party decides to file one. It further claims that, because the rule did not require a written response to Grimes's motion, LR49-TR5-203 did not

---

[1] Grimes also raised claims under the Indiana Wage Claims Statute and Wage Payment Statute. Grimes concedes that, had his case gone to trial rather than being settled, his claim under the Wage Claims Statute would have failed because he did not first file a claim with the Indiana Department of Labor and exhaust his administrative remedies as required. *See Alexander v. Linkmeyer Dev. II, LLC*, 119 N.E.3d 603, 620 (Ind. Ct. App. 2019). As to his claim under the Wage Payment Statute, the Church argues that the trial court did not have subject matter jurisdiction because the Wage Payment Statute only applies to current employees and those who have voluntarily left employment, *see* Indiana Code § 22-2-5-1, and Grimes was not a current employee at the time he filed his complaint, and he claimed that he was terminated, not that he voluntarily left his employment. Rather than showing a lack of subject matter jurisdiction, the Church's arguments are a challenge to the legal sufficiency of Grimes's claims. Therefore, the trial court had subject matter jurisdiction over Grimes's claim under the Wage Payment Statute.

provide any basis for the trial court's entry of judgment against it, and the trial court's entry of judgment without allowing the Church to present arguments at a hearing amounted to the functional equivalent of a default judgment, for which the local rule does not provide a basis. Because the trial court erred in granting Grimes's motion to enforce the alleged settlement agreement, the Church maintains that it was an abuse of discretion for the trial court to deny their motion to vacate that judgment.

[24] The Church is actually appealing from a denial of its motion to vacate the order enforcing the settlement agreement, not the previously entered judgment on Grimes's motion to enforce settlement agreement. When reviewing a trial court's denial of a motion to vacate its judgment, we review for an abuse of discretion. *Kolbet v. Kolbet*, 760 N.E.2d 1146, 1153 (Ind. Ct. App. 2002) (citing *In re Marriage of Bates,* 474 N.E.2d 140, 142 (Ind. Ct. App. 1985)). An abuse of discretion occurs where the trial court's ruling is clearly against the logic and effect of the facts and inferences supporting the judgment. *Id*.

[25] Here, Grimes filed a motion to enforce settlement agreement, which detailed what transpired during the parties' settlement conference and evidence of the parties' agreement and requested a hearing. *Appellants' App. Vol. V* at 55-68. The trial court set it for a hearing. *Id*. at 70. The Church filed no written response. *Appellants' App. Vol. II* at 26. After the deadline to file a response had passed, *see generally* Marion County Circuit and Superior Court Civil Rule

LR49-TR5-203,[2] Grimes filed a motion to vacate the hearing date, contending that there was no need to conduct a hearing because the Church's lack of response showed that Grimes's evidence was undisputed and the trial court could rule on his motion to enforce the settlement agreement based on the evidence Grimes submitted. *Appellants' App. Vol. V* at 71-72. The Church did not object to this motion and again filed no response. *Appellants' App. Vol. II* at 26. Fifteen days later, the clerk filed an order from the trial court granting Grimes's motion to vacate the hearing. *Id*.; *Appellee's App. Vol. II* at 55. The Church did not file any objection to this order vacating the hearing, nor did it file anything requesting that the hearing be rescheduled so that it could present evidence and argument. *Appellants' App. Vol. II* at 26. On August 10, 2017, several weeks later, the clerk filed an order from the court granting Grimes's motion to enforce settlement agreement and entering judgment against the Church for $80,000.00. *Appellants' App. Vol. V* at 74.

[26] Thirty days later, the Church filed a motion to correct error, requesting that the August 10 order be set aside and requesting that a hearing be set because the trial court's order enforcing the parties' settlement agreement entered judgment "for a set amount" and "[did] not properly include the terms that were part of the settlement conference and [did] not accurately set the terms of the deal." *Id*.

---

[2] LR49-TR5-203 states in pertinent part: "If the statement regarding the position of the opposing party(ies) required under subsection A herein indicated that objection to the granting of said motion may ensue, said objecting party shall have 15 days from the date of filing to file a response to said motion." LR49-TR5-203(B).

at 123-24. No other errors were alleged in the motion. *Id*. The trial court denied the motion to correct error on September 19, 2017. *Appellants' App. Vol. II* at 29. On July 24, 2018, the Church filed a motion to vacate the trial court's order enforcing the parties' settlement agreement, raising ten arguments, none of which had been presented in response to Grimes's motion to enforce settlement agreement, and only two of which had been presented in the motion to correct error, specifically, that the judgment should have awarded payment in installments rather than a lump-sum, and the trial court should have held a hearing. *Appellants' App. Vol. VI* at 45-75.

[27]  We conclude that it was proper for the trial court to issue an order on Grimes's motion to enforce the settlement agreement without holding a hearing. Initially, the trial court was not required to conduct a hearing on Grimes's motion to enforce the settlement agreement. Under LR49-TR5-203(C), "any oral argument requested may be heard at the discretion of the Court." Therefore, the trial court was within its discretion to make a ruling on Grimes's motion without first conducting oral argument or a hearing on the motion.

[28]  Secondly, the Church's lack of action regarding the motions filed by Grimes and the actions taken by the trial court weaken its arguments. The Church failed to file a response in opposition to Grimes's motion, and then again failed to file a response or objection when Grimes filed a motion to vacate the hearing set for the initial motion to enforce the settlement agreement. These failures to respond or object to Grimes's motions created an inference that the Church did not oppose those motions, particularly considering the statements in the motion

to vacate the hearing, which contended that there was no need to conduct a hearing because the Church's lack of response showed that Grimes's evidence was undisputed and the trial court could rule on his motion to enforce the settlement agreement based on the evidence Grimes submitted. *Appellants' App. Vol. V* at 71-72. Fifteen days passed before the trial court granted Grimes's motion to vacate the hearing,[3] and then several weeks passed before the trial court issued its order granting Grimes's motion to enforce the settlement agreement. At no time from June 9, 2017, when Grimes filed his motion to enforce the settlement agreement, until August 10, 2017, when the trial court granted the motion and entered judgment against the Church, did the Church file any responses or objections to the motions filed. Although the Church's contentions appear to indicate that they did not believe it was necessary to file a response to Grimes's motions because it planned to argue its position at the scheduled hearing, if this were true, the trial court's order vacating the hearing should have prompted them to file an objection. The Church did not file any sort of objection to the enforcement of the settlement agreement or vacation of the hearing until it filed a motion to correct error on September 8, 2017. *Id.* at 123-24. The Church failed to raise its contentions before the trial court until after a ruling on the motion for enforcement of the settlement agreement had been made. A party may not raise an issue for the first time in a motion to

---

[3] Although the Church argues that the trial court did not comply with LR49-TR5-203 because it granted Grimes's motion to vacate hearing on the same date that the motion was filed, the order granting the motion was not actually filed by the clerk until July 14, 2017, fifteen days after the motion was filed. *Appellants' App. Vol. II* at 26.

correct error or on appeal. *Christmas v. Kindred Nursing Ctrs. Ltd. P'ship*, 952 N.E.2d 872, 878 (Ind. Ct. App. 2011) (citing *Troxel v. Troxel,* 737 N.E.2d 745, 752 (Ind. 2000)). We conclude that the trial court did not abuse its discretion when it ruled on Grimes's motion to enforce the settlement agreement without conducting a hearing.

[29] The Church also argues that the trial court abused its discretion when it granted Grimes's motion to enforce the settlement agreement because no settlement agreement existed. Specifically, the Church contends that (1) the purported oral settlement agreement is unenforceable because it violates the Statute of Frauds, (2) the evidence of the settlement agreement presented by Grimes's counsel was inadmissible because the statements of counsel are not evidence, and counsel should have withdrawn under Indiana Rules of Professional Conduct 3.7, which states that a lawyer shall not act as an advocate at a trial where the lawyer is likely to be a necessary witness, (3) no settlement agreement existed because there was no evidence that the required meeting of the minds occurred or evidence to demonstrate agreement on the essential terms of the purported settlement agreement, and (4) the trial court's judgment contravened the terms of the alleged settlement agreement. We note that all of these issues, except for (4), were raised for the first time by the Church in its motion to vacate on July 24, 2018. *Appellants' App. Vol. VI* at 45-49.

[30] In its order enforcing the settlement agreement, the trial court found that the parties had reached an agreement and entered judgment in favor of Grimes and against the Church in the amount of $80,000.00. *Appellants' App. Vol. V* at 80.

The Church asserts that the allegations by Grimes's counsel showed that it had, in fact, rejected Grimes's last counteroffer and had presented a new counteroffer to Grimes, and before Grimes could accept such counteroffer, the Church revoked the counteroffer, leaving no offer accepted and no settlement terms still pending. The Church thus maintains that no offer and acceptance occurred, and no enforceable settlement agreement existed. We disagree and, as we explain below, conclude that the evidence presented by Grimes in his motion for enforcement of the settlement agreement was sufficient to support the judgment by the trial court.

[31] "Indiana strongly favors settlement agreements and if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement." *MH Equity Managing Member, LLC v. Sands*, 938 N.E.2d 750, 757 (Ind. Ct. App. 2010) (citing *Georgos v. Jackson,* 790 N.E.2d 448, 453 (Ind. 2003)), *trans. denied.* Settlement agreements are governed by the same general principles of contract law as other agreements. *Id.* Generally, a settlement agreement is not required to be in writing. *Id.* (citing *Estate of Skalka v. Skalka,* 751 N.E.2d 769, 771 (Ind. Ct. App. 2001)). The existence of a contract is a question of law, and the basic requirements are "offer, acceptance, consideration, and 'a meeting of the minds of the contracting parties.'" *Id.* (quoting *Batchelor v. Batchelor,* 853 N.E.2d 162, 165 (Ind. Ct. App. 2006)). The intention of the parties to a contract is a factual matter that must be determined from all the circumstances. *Zimmerman v. McColley,* 826 N.E.2d 71, 76 (Ind. Ct. App. 2005). To be valid and enforceable,

a contract must be reasonably certain and definite. *Zukerman v. Montgomery*, 945 N.E.2d 813, 819 (Ind. Ct. App. 2011). "All that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom; absolute certainty in all terms is not required." *Id*. Only essential terms are necessary for a contract to be enforceable. *Id.*

[32] Here, the evidence[4] in Grimes's motion to enforce the settlement agreement established that after initial discussion, Grimes offered to settle his claims against the Church for $90,000.00. *Id*. at 66. The Church counteroffered for $40,000.00 and a confidentiality provision. *Id*. Grimes agreed to the confidentiality provision and counteroffered for $80,000.00 paid via an initial reasonable lump-sum payment followed by a reasonable payoff of the balance over time, and an attorney fee provision should the Church fail to pay. *Id*. The Church agreed to the $80,000.00 settlement payment and the attorney fee provision and proposed that the initial payment be $15,000.00 with semi-annual payments of the balance over four years. *Id*. Grimes's counsel then called

---

[4] As to the Church's arguments that there was no admissible evidence presented to establish that an agreement has occurred, we disagree. When Grimes filed his motion to enforce the settlement agreement, he included two exhibits, a letter that he had sent to counsel for the Church, outlining what had transpired during the settlement conference and emails between counsel discussing whether the Church would honor the agreement. *Appellants' App. Vol. V* at 62-67. Additionally, we disagree with its contention that Grimes's counsel was required to withdraw under Indiana Professional Conduct Rule 3.7(a), which states that a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness. If the Church believed that Grimes's counsel was prohibited from acting as both an advocate and a witness as to what transpired at the settlement conference, it should have moved to disqualify him at the time the motion to enforce the settlement agreement was filed. If the Church had done so, then a hearing could have been held to determine if the attorney should have been disqualified from arguing the motion.

Grimes to convey the parties' agreement and confirm his approval of the payment terms the Church had recommended. *Id*. As Grimes's counsel was preparing to return to the conference room to convey Grimes's approval of its proposed payment terms, the Church's counsel attempted to rescind the parties' agreement, stating that he only had authority to offer $50,000.00. *Id*. A follow-up conversation between the parties occurred, during which Grimes's counsel reserved the right to enforce the settlement agreement reached at $80,000.00, and counsel for the Church acknowledged Grimes's right to do so. *Id*. From this evidence, the parties had reached a reasonable certainty on the essential terms of the settlement agreement, $80,000.00 in a reasonable initial lump sum and reasonable installments thereafter, a confidentiality clause, and an attorney fee provision in favor of Grimes should the Church fail to pay. We conclude that, from the undisputed evidence, the trial court was within its discretion to determine that the parties had agreed to settle the case for $80,000.00 and, therefore, did not abuse its discretion in granting Grimes's motion to enforce the settlement agreement.[5]

[33] The Church also argues that there was no enforceable agreement under the Statute of Frauds because the agreement could not be performed within one

---

[5] The Church also contends that the trial court's judgment contravened the terms of the settlement agreement. However, as we have concluded that the parties had reached a reasonable certainty on the essential terms of the settlement agreement, $80,000.00, in a reasonable initial lump sum, and reasonable installments thereafter, a confidentiality clause, and an attorney fee provision in favor of Grimes should the Church fail to pay, the trial court was within its discretion to enter judgement in favor of Grimes in the amount of $80,000.00.

year of the agreement. Indiana Code section 32-21-1-1 provides in pertinent part:

> (b) A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:
>
> . . . .
>
> (5) An action involving any agreement that is not to be performed within one (1) year from the making of the agreement.

Ind. Code § 32-21-1-1(b)(5). The one-year clause of the Statute of Frauds applies "only to contracts which, by the express stipulations of the parties, were not to be performed within a year, and not to those which might or might not upon a contingency, be performed within a year." *Tobin v. Ruman*, 819 N.E.2d 78, 85 (Ind. Ct. App. 2004) (quoting *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 887 (Ind. Ct. App. 2000)), *trans. denied*. In other words, "it is apparent that only if it is *impossible* for an oral contract to be completed within one year does it fall within the Statute of Frauds." *Id.* (emphasis in original).

[34] Here, the essential terms of the settlement agreement between the parties was for $80,000.00, in a reasonable initial lump sum, and reasonable installments thereafter, a confidentiality clause, and an attorney fee provision in favor of Grimes should the Church fail to pay. *Appellants' App. Vol. V* at 66. Although

the attorneys thereafter discussed what the "reasonable lump-sum payment" and "reasonable payoff of the balance over time" would be, those specifics were not material terms, which is clear from the trial court's judgment, which only ordered a judgment in favor of Grimes in the amount of $80,000.00. *Id*. at 80. While the Church did not expect to pay the settlement amount in less than one year, such an expectation is not sufficient to cause the agreement to be unenforceable under the Statute of Frauds. *See Tobin*, 819 N.E.2d at 85. We, therefore, conclude that the trial court did not abuse its discretion when it denied the Church's motion to vacate the order enforcing the settlement agreement.

## III.  Attorney Fees

[35]   The Church lastly argues that the trial court abused its discretion when it awarded attorney fees. It initially claims that the attorney fee award was an abuse of discretion because the award was based on a provision in the order enforcing the settlement agreement that authorized attorney fees expended in Grimes's enforcement of the judgment, and it maintains that the judgment was void. However, if we find that the judgment was not void, as we have in this opinion, the Church further contends that the trial court abused its discretion because the attorney fee award was unreasonable for the services provided, and the appellate attorney fees requested by Grimes were not made necessary by the Church's initiation of the previous premature appeal. Therefore, the Church requests that we reduce the attorney fee amount to $2,594.98.

[36] We review a trial court's award of attorney fees, and the amount of any such award, for an abuse of discretion. *R.L. Turner Corp. v. Wressell*, 44 N.E.3d 26, 38 (Ind. Ct. App. 2015) (citing *Daimler Chrysler Corp. v. Franklin,* 814 N.E.2d 281, 286 (Ind. Ct. App. 2004)), *trans. denied*. An abuse of discretion occurs when the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *Id*. "'An award of attorney's fees will be reversed on appeal as excessive only where an abuse of the trial court's discretion is apparent on the face of the record.'" *Id*. (quoting *Daimler Chrysler,* 814 N.E.2d at 287. We do not reweigh the evidence, but instead, we determine whether the evidence before the trial court can serve as a rational basis for its decision. *Id*. (citing *DePuy Orthopaedics, Inc. v. Brown,* 29 N.E.3d 729, 732 (Ind. 2015)).

[37] In the present case, although the trial court included in its order enforcing the settlement agreement an order that Grimes "shall be entitled to recover his reasonable attorney fees in enforcing said judgment," *Appellants' App. Vol. V* at 80, the attorney fees at issue in this appeal were ordered pursuant to this court's order dismissing the appeal filed by the Church in January 2018 and dismissed in June 2018. *Appellee's App. Vol. II* at 51. Thereafter, Grimes submitted his request for reasonable appellate attorney fees to the trial court, asking for $6,456.71. *Appellants' App. Vol. VI* at 2-5. His request set out the work done in association with the appeal filed by the Church, including conducting research and preparation in anticipation of responding to arguments on appeal, responding to and researching the motion to dismiss their own appeal filed by

the Church, preparing a motion to strike filed by Grimes, and preparing the motion for attorney fees, totaling 26.25 hours at $245.97 per hour. *Id.*

[38] Grimes contends that the attorney fee award was reasonable because in the previous appeal, his counsel not only opposed the motion to dismiss the appeal based on a contention that the Church's legal arguments were wrong, but that his counsel also expended time preparing a defense of the garnishment orders that he argues were ripe for appeal. *Appellee's Br.* at 42 (citing *Appellants' App. Vol. VI* at 17). He also asserts that it was reasonable to spend time preparing the motion to strike a reply that the Church had no right to file and that raised a new argument and that such a motion was not frivolous just because it was not granted. *Id.* at 42-43. We agree and conclude that the trial court did not abuse its discretion when it awarded appellate attorney fees in the amount of $6,456.71.

[39] Affirmed.

Vaidik, C.J., and Najam, J., concur.